**UNITED STATES of America, Appellant,**

v.

**DUKE LABORATORIES, INC., Appellee.**

No. 353, Docket 28489.

United States Court of Appeals Second Circuit.

Argued April 9, 1964.

Decided Oct. 7, 1964.

Rufus E. Stetson, Jr., Washington, D. C. (Louis Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Giora Ben-Hurin, Attorneys, Department of Justice and Robert C. Zampano, U. S. Atty., of counsel), for appellant.

Maguire, Cole & Bentley, Stamford, Conn. (John N. Cole and Peter Bentley, Stamford, Conn., of counsel), for appellee.

Before SWAN, MOORE and SMITH, Circuit Judges.

MOORE, Circuit Judge.

The United States of America (the Government) appeals from a judgment entered upon a jury verdict adjudging the Government liable to Duke Laboratories, Inc. (the taxpayer) for an income tax refund of $475,133.35 covering taxes paid upon assessment for the years 1956 through 1959. The Government also appeals from the denial of a motion for judgment in its favor notwithstanding the verdict or, in the alternative, for a new trial.

The taxes in question were assessed under sections 531–537 of the Internal Revenue Code of 1954 on the ground that the taxpayer had been availed of for the purpose of avoiding income taxes with respect to its stockholders. The accumulated earnings tax (Sec. 531) applies to every corporation "availed of for the purpose of avoiding the income tax with respect to its shareholders * * * by permitting earnings and profits to accumulate instead of being divided or distributed" (Sec. 532(a)). The fact that earnings have been "permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid" such tax "unless the corporation by the preponderance of the evidence shall prove to the contrary" (Sec. 533(a)). The term "reasonable needs of the business" includes "the reasonably anticipated needs" (Sec. 537).

To guide the jury in its analysis of the facts and the court in its resolution of legal issues, the court submitted two special questions to be answered "yes" or "no." The first question was "Did plaintiff, Duke Laboratories, Inc., permit its earnings or profit to accumulate beyond the reasonable needs of its business?" On the paper submitted to the jury, space was provided for "yes" or "no" answers for each of the years 1956–1959. The second question was: "Were such accumulations, if any, made for the purpose of avoiding the surtax upon the stockholders of Duke Laboratories, Inc.?" Similar space for answers was provided.

In its charge, the court instructed the jury that "Your verdict upon the ultimate issue just stated depends upon your determination of the following two basic questions. * * *" The court then advised the jury that "depending upon

your answers to these questions, the lawyers for both sides have stipulated that the verdict will be entered automatically through your foreman, and you will not have to stand up here and say, 'We find for the defendant,' or, 'We find for the plaintiff,' and if for the plaintiff in 'X' dollars." The jury answered the first question in the affirmative and the second question in the negative as to each of the years 1956–1959. Accordingly, their verdict was in favor of the taxpayer and judgment was entered thereon. The court denied the Government's motion for judgment notwithstanding the verdict and in the alternative for a new trial.

The Government contends that the trial court erroneously presented the case to the jury in that he used the statutory language of section 532 in his second question wherein he told the jury to determine whether the accumulations were made "for the purpose of avoiding the income tax." This question, the Government argues, should have read "a" purpose instead of "the" purpose.

Courts should have some reluctance in rewriting statutes. The Congress did not use the article "a" in section 532 or 533. It did not choose to employ "any" or "dominant" or "primary" purpose. A finding that the accumulations were beyond the reasonable needs of the business was to "be determinative of *the* purpose to avoid" (emphasis supplied) unless the taxpayer "by the preponderance of the evidence shall prove to the contrary."

The Government's real quarrel is with "the singular verdict reached by the jury below." It is willing to have the verdict stand as to the unreasonableness of the accumulations and even concedes that "a corporation's 'honest belief' that its earnings are not excessive for its needs, though mistaken, may exempt it from liability under Section 532(a)," but it is unwilling to accept the jury's factual determination as to "honest belief." The jury was misled, it claims, by the "the" in the second question.

Analysis of the court's instructions to the jury dispels any such inference. The jury was told that the taxpayer had the burden "to show by a preponderance of the evidence the absence of any intent to avoid the income tax with respect to its shareholders, regardless of whatever other purposes for accumulation the plaintiff may have established." This instruction was followed by the statement that "The intent to avoid the income tax with respect to shareholders need not be the sole or dominant intent in permitting the accumulations." Even the court's illustration permitted the jury to rely on any purpose, the court saying, "Whatever the motive may have been, when the practice of accumulation was adopted, an intent to avoid the income tax which induced or aided in inducing the continuance of that practice, is sufficient to impose the tax on the accumulated fund * * *." The court, thus, gave to the jury the widest latitude to determine whether tax avoidance was a factor in the formulation of any intent which might have motivated the taxpayer's actions.

Although the facts are not in issue, they may well explain why the jury's verdict was not quite so "unique" as the Government would have it despite its concession that the verdict in taxpayer's favor was "clearly permissible under the statute." Here again is the situation of the small but growing corporation with, for all practical purposes, stock ownership in the hands of a single individual. Under these circumstances, the Government is entitled to scrutinize with care all pertinent facts relating to accumulations. However, in final analysis, resolution of these facts is for the jury.

The taxpayer was formed in 1928 by Dr. Carl Herzog, the owner of 235 of 250 shares outstanding. During 1956–1959, the years in question, his annual salary was $40,000. The taxpayer's business consisted primarily of the manufacture and sale of bandages, dressings, pharmaceuticals, cosmetics and soaps. Its market has been largely in the field of wholesale druggists, certain retail outlets serving the medical profession, surgical and first aid supply houses, the Red Cross and hospitals. Competition in the field from larger units was very great.

 

and sales methods changed radically. Illustrative of these changes were the door-to-door sales and chain store sales. This type of marketing required extensive and costly advertising by television, radio and magazine.

From 1953 to 1961 the taxpayer had made capital expenditures of over $1,-500,000, all financed from earnings because the taxpayer had a policy of self-financing instead of borrowing from outside sources. From a humble beginning in New York City with a plant area of less than 1,000 square feet, it progressively enlarged its quarters to some 6,000 square feet (Long Island City), 25,000 square feet (Stamford) and in 1956, 60,-000 square feet (South Norwalk). Insufficient capital prevented the construction of a weaving plant in the Norwalk building. However, in 1960 a mill was purchased in Paterson, New Jersey, at a cost of over $100,000 and a pension plan requiring some $160,000 was put into effect.

■ Further review of the many items of proof is unnecessary. The problem for the jury was to determine from all the evidence whether there was any intent in making the accumulations to avoid taxes. The jury was told that it "need not be the sole or dominant intent"; they were told that Dr. Herzog "knew that a distribution in the form of dividends would increase his income tax liability"; and they knew that Dr. Herzog was a very interested witness. Yet, after observing Dr. Herzog as a witness for some three days, the jury apparently believed that the accumulations were not to avoid a tax but were for taxpayer's legitimate business needs. A determination of the intent of a third party is always difficult but it is peculiarly within the province of the jury which can both from observation of the witness and analysis of the proof best decide the question. The Government does not seriously disagree with this proposition but argues that "[t]here must be some basis in fact for an 'honest belief' beyond its mere assertion." A five-day trial and the many exhibits introduced therein gave to the jury much more to deal with than a mere assertion. Their verdict is adequately supported by the proof. For the same reason, the court properly denied the Government's motion for judgment, notwithstanding the verdict and in the alternative for a new trial.

Affirmed.