UNITED STATES *v.* DONRUSS CO.

No. 17.   Argued October 22–23, 1968.—Decided January 13, 1969.

*Assistant Attorney General Rogovin* argued the cause for the United States.   With him on the brief were *Solicitor General Griswold, Harris Weinstein, Richard C. Pugh,* and *Martin T. Goldblum.*

*Richard L. Braunstein* argued the cause for respondent. With him on the brief was *Bernard J. Long.*

*Richard E. Nolan* and *John P. Carroll, Jr.,* filed a brief for the Shaw-Walker Co., as *amicus curiae,* urging affirmance.

MR. JUSTICE MARSHALL delivered the opinion of the Court.

This case involves the application of §§ 531–537 of the Internal Revenue Code of 1954, which impose a surtax on corporations "formed or availed of for the purpose of avoiding the income tax with respect to . . . [their] shareholders . . . by permitting earnings and profits to accumulate instead of being divided or distributed."

Respondent is a corporation engaged in the manufacture and sale of bubble gum and candy and in the operation of a farm.   Since 1954, all of respondent's out-

standing stock has been owned by Don B. Wiener. In each of the tax years from 1955 to 1961, respondent operated profitably, increasing its undistributed earnings from $1,021,288.58 to $1,679,315.37. The company did not make loans to Wiener or provide him with benefits other than a salary, nor did it make investments unrelated to its business, but no dividends were declared during the entire period.

Wiener gave several reasons for respondent's accumulation policy; among them were capital and inventory requirements, increasing costs, and the risks inherent in the particular business and in the general economy. Wiener also expressed a general desire to expand and a more specific desire to invest in respondent's major distributor, the Tom Huston Peanut Company. There were no definite plans during the tax years in question, but in 1964 respondent purchased 10,000 shares in Tom Huston at a cost of $380,000.

The Commissioner of Internal Revenue assessed accumulated earnings taxes against respondent for the years 1960 and 1961. Respondent paid the tax and brought this refund suit. At the conclusion of the trial, the Government specifically requested that the jury be instructed that:

> "[I]t is not necessary that avoidance of shareholder's tax be the sole purpose for the unreasonable accumulation of earnings; it is sufficient if it is one of the purposes for the company's accumulation policy."

The instruction was refused and the court instructed the jury in the terms of the statute that tax avoidance had to be "the purpose" of the accumulations. The jury, in response to interrogatories, found that respondent had accumulated earnings beyond the reasonable needs of its business, but that it had not retained its earnings

for the purpose of avoiding income tax on Wiener. Judgment was entered for respondent and the Government appealed.

The Court of Appeals reversed and remanded for a new trial, holding that "the jury might well have been led to believe that tax avoidance must be the sole purpose behind an accumulation in order to impose the accumulated earnings tax." *Donruss Co.* v. *United States,* 384 F. 2d 292, 298 (C. A. 6th Cir. 1967). The Court of Appeals rejected the Government's proposed instruction and held that the tax applied only if tax avoidance was the "dominant, controlling, or impelling motive" for the accumulation. *Ibid.* We granted the Government's petition for certiorari to resolve a conflict among the circuits[1] over the degree of "purpose" necessary for the application of the accumulated earnings tax, and because of the importance of that question in the administration of the tax. 390 U. S. 1023 (1968).

---

[1] The court below adopted the view of the First Circuit. See *Young Motor Co.* v. *Commissioner,* 281 F. 2d 488, 491 (1960); see also *Apollo Industries, Inc.* v. *Commissioner,* 358 F. 2d 867, 875–876 (1966). The Second Circuit has rejected "the view that the prevention of the imposition of surtaxes must have been shown to have been the dominant factor behind the accumulations." *Trico Prods. Corp.* v. *Commissioner,* 137 F. 2d 424, 426, cert. denied, 320 U. S. 799 (1943). See also *United States* v. *Duke Laboratories, Inc.,* 337 F. 2d 280 (1964). The Fifth Circuit has also rejected the position that tax avoidance must be the "primary or dominant" purpose of the accumulation. *Barrow Mfg. Co.* v. *Commissioner,* 294 F. 2d 79, 82 (1961), cert. denied, 369 U. S. 817 (1962). The Eighth and Tenth Circuits have taken what appears to be an intermediate position, holding that imposition of the tax is proper if tax avoidance is one of the "determining purposes." *Kerr-Cochran, Inc.* v. *Commissioner,* 253 F. 2d 121, 123 (C. A. 8th Cir. 1958); *World Pub. Co.* v. *United States,* 169 F. 2d 186, 189 (C. A. 10th Cir. 1948), cert. denied, 335 U. S. 911 (1949). The Sixth Circuit has adhered to its view in *Shaw-Walker Co.* v. *Commissioner,* 390 F. 2d 205 (1968). A petition for certiorari in that case is now pending in this Court.

## I.

The accumulated earnings tax is established by §§ 531–537 of the Internal Revenue Code of 1954. Section 531 imposes the tax.[2] Section 532 defines the corporations to which the tax shall apply. That section provides:

"The accumulated earnings tax imposed by section 531 shall apply to every corporation . . . formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed."[3]

Section 533 (a) provides that:

"For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary."

In cases before the Tax Court, § 534 allows the taxpayer in certain instances to shift to the Commissioner the burden of proving accumulation beyond the reasonable needs of the business. Section 535 defines "accu-

---

[2] The rates are 27½% of the accumulated taxable income (defined in § 535) not in excess of $100,000, plus 38½% of the accumulated taxable income in excess of $100,000. Internal Revenue Code of 1954, § 531.

[3] Section 532 (b) exempts personal holding companies, foreign personal holding companies, and certain tax-exempt corporations. Internal Revenue Code of 1954, § 532 (b). Both types of holding companies are taxed under other provisions of the Code. See Internal Revenue Code of 1954, §§ 541–547 (personal holding companies); Internal Revenue Code of 1954, §§ 551–558 (foreign personal holding companies).

mulated taxable income." It also provides for a credit for that portion of the earnings and profits retained for the reasonable needs of the business, with a minimum lifetime credit of $100,000. Finally, § 537 provides that "reasonable needs of the business" include "reasonably anticipated" needs.

The dispute before us is a narrow one. The Government contends that in order to rebut the presumption contained in § 533 (a), the taxpayer must establish by the preponderance of the evidence that tax avoidance with respect to shareholders was not "one of the purposes" for the accumulation of earnings beyond the reasonable needs of the business. Respondent argues that it may rebut that presumption by demonstrating that tax avoidance was not the "dominant, controlling, or impelling" reason for the accumulation. Neither party questions the trial court's instructions on the issue of whether the accumulation was beyond the reasonable needs of the business, and respondent does not challenge the jury's finding that its accumulation was indeed unreasonable. We intimate no opinion about the standards governing reasonableness of corporate accumulations.

We conclude from an examination of the language, the purpose, and the legislative history of the statute that the Government's construction is the correct one. Accordingly, we reverse the judgment of the court below and remand the case for a new trial on the issue of whether avoidance of shareholder tax was one of the purposes of respondent's accumulations.

## II.

Both parties argue that the language of the statute supports their conclusion. Respondent argues that Congress could have used the article "a" in §§ 532 and 533 if it had intended to adopt the Government's test. Instead, argues respondent, Congress used the article "the"

in the operative part of the statute, thus indicating that tax avoidance must at least be the dominant motive for the accumulation.[4] The Government argues that respondent's construction gives an unduly narrow effect to the word "the." Instead, contends the Government, this Court should focus on the entire phrase "availed of for the purpose." Any language of limitation should logically modify "availed of" rather than "purpose" and no such language is present. The Government further argues that Congress has dealt with similar problems in other sections of the Code and has used terms such as "principal purpose," §§ 269 (a), 357 (b)(1), and "used principally," § 355 (a)(1)(B). Similar terms could have been used in §§ 532 (a) and 533 (a), but were not. Finally, the Government points to the fact that prior to adoption of § 102 of the Revenue Act of 1938 (52 Stat. 483) the forerunner of § 532 (a) used the words "the purpose," while the evidentiary section used the words "a purpose," thus indicating that tax avoidance need only be one purpose. Respondent replies that the change from "a" to "the" in the evidentiary section supports its conclusion. Respondent also contends that the statute before the change was consistent with its construction.

We find both parties' arguments inconclusive. The phrase "availed of for the purpose" is inherently vague, and there is no indication in the legislative history that Congress intended to attach any particular significance to the use of the article "the." Nor do we find the change in the evidentiary section from "a" to "the" at all helpful. That change came as part of a significant revision in the operation of the section, and there is no indication that it was other than a mere change in

---

[4] The First Circuit in *Young Motor Co.* v. *Commissioner*, 281 F. 2d 488 (1960), in part based its conclusion that tax avoidance must be the "primary or dominant purpose" on the use of "the" rather than "a."

phraseology.[5]   Indeed, the Report of the Senate Finance Committee accompanying the bill that was to become the Revenue Act of 1938, insofar as it sheds any light on the question, supports the view of the Government. "The proposal is to strengthen [the evidentiary] section by requiring the taxpayer by a clear preponderance of the evidence to prove the absence of *any* purpose to avoid surtaxes upon shareholders . . . ."   S. Rep. No. 1567, 75th Cong., 3d Sess., 5 (1938) (emphasis added). Since the language of the statute does not provide an answer to the question before us,[6] we have examined in detail the relevant legislative history.   That history leads us to conclude that the test proposed by the Government is consistent with the intent of Congress and is necessary to effectuate the purpose of the accumulated earnings tax.

## III.

The accumulated earnings tax is one congressional attempt to deter use of a corporate entity to avoid personal income taxes.   The purpose of the tax "is to compel the company to distribute any profits not needed for the conduct of its business so that, when so distributed, individual stockholders will become liable" for taxes on the dividends received, *Helvering* v. *Chicago Stock Yards Co.*, 318 U. S. 693, 699 (1943).   The tax originated in the Tariff Act of 1913, 38 Stat. 114, the first personal income tax statute following ratification of the Sixteenth Amendment.   That Act imposed a tax on the shareholders of any corporation "formed or fraudulently

---

[5] No change was made in that part of the statute providing that "[t]he fact that any corporation is a mere holding or investment company shall be prima facie evidence of *a* purpose" to avoid tax. Revenue Act of 1938, § 102 (b), 52 Stat. 483 (emphasis added).

[6] The Regulations shed no light on the problem.   See Treas. Reg. §§ 1.531–1.537, 26 CFR §§ 1.531–1.537.

availed of for the purpose of preventing the imposition of such tax through the medium of permitting such gains and profits to accumulate instead of being divided or distributed . . . ." § II (A)(2), 38 Stat. 166. The same section provided that accumulation beyond the reasonable needs of the business "shall be prima facie evidence of a fraudulent purpose to escape such tax . . . ." 38 Stat. 167.

In its first years of operation, difficulties in proving a fraudulent purpose made the tax largely ineffective. To meet this problem, Congress deleted the word "fraudulently." Revenue Act of 1918, § 220, 40 Stat. 1072; see S. Rep. No. 617, 65th Cong., 3d Sess., 5 (1918).[7]

During the next few years, numerous complaints were made about the ineffectiveness of the accumulated earnings tax. Various attempts were made to strengthen the tax during the 1920's and 1930's, but the statute remained essentially the same until 1934. See Joint Committee on the Economic Report, The Taxation of Corporate Surplus Accumulations, 82d Cong., 2d Sess, 200–205 (Comm. Print 1952). In 1934, Congress dealt with one of the more flagrant examples of that ineffectiveness, the personal holding company. Personal holding companies were exempted from the general accumulated earnings tax and were subjected to a tax on undistributed income, regardless of the purpose of that accumulation. Revenue Act of 1934, §§ 102, 351, 48 Stat. 702, 751. The reason for the change was that, "[b]y making partial distribution of profits and by showing some need for the accumulation of the remain-

---

[7] Another major change was made in the Revenue Act of 1921, 42 Stat. 227. Section 220 of that Act shifted the incidence of the accumulated earnings tax from the shareholders to the corporation itself. 42 Stat. 247. The change was prompted by the decision in *Eisner* v. *Macomber,* 252 U. S. 189 (1920). See H. R. Rep. No. 350, 67th Cong., 1st Sess., 12–13 (1921).

ing profits, the taxpayer makes it difficult to prove a purpose to avoid taxes." H. R. Rep. No. 704, 73d Cong., 2d Sess., 11 (1934).

Again in 1936, Congress attempted to solve the continuing problem of undistributed corporate earnings. "The difficulty of proving such [tax avoidance] purpose . . . has rendered . . . [the accumulated earnings tax] more or less ineffective." H. R. Rep. No. 2475, 74th Cong., 2d Sess., 5 (1936). However, Congress did not change the requirement that "purpose" must be proved. Rather, it attempted the alternative method of imposing an undistributed profits surtax on most corporations. Revenue Act of 1936, § 14, 49 Stat. 1655. The tax on personal holding companies and the general accumulated earnings tax were retained.[8]

The problem continued to be acute and several proposals were made by and to Congress in 1938. The House Ways and Means Committee proposed a surtax on all closely held operating companies. Only minor changes were proposed by the Committee in the accumulated earnings tax. See H. R. Rep. No. 1860, 75th Cong., 3d Sess. (1938). The House rejected all but the changes in the accumulated earnings tax. The Senate approached the problem of retained corporate earnings in a different way. Labeling the House Committee's recommendation a "drastic" remedy, the Senate Finance Committee recommended "dealing with this problem where it should be dealt with—namely, in section 102, relating to corporations improperly accumulating surplus. The proposal is to strengthen this section by requiring the taxpayer by a

---

[8] Tax avoidance and evasion were a major subject of congressional concern in 1937. See, e. g., H. R. Rep. No. 1546, 75th Cong., 1st Sess. (1937). Congress addressed itself to another aspect of the problem by establishing a separate method for the taxation of foreign personal holding companies, again without regard to corporate intent. Revenue Act of 1937, § 201, 50 Stat. 818.

clear preponderance of the evidence to prove the absence of any purpose to avoid surtaxes upon shareholders after it has been determined that the earnings and profits have been unreasonably accumulated." S. Rep. No. 1567, 75th Cong., 3d Sess., 5 (1938). The change was thought to make it clear that the burden of proving intent, rather than the lesser burden of producing evidence on the question, was to be on the taxpayer. *Id.*, at 16. The Senate proposal was enacted. Revenue Act of 1938, § 102, 52 Stat. 483. The Committee felt that a "reasonable enforcement of this revised section will reduce tax avoidance . . . ." S. Rep. No. 1567, *supra*, at 5.

Only insignificant changes were made in the accumulated earnings tax from 1938 to 1954. Discussion of the problem continued, however, and numerous proposals were made to alter the tax. See, *e. g.*, Joint Committee on the Economic Report, The Taxation of Corporate Surplus Accumulations, 82d Cong., 2d Sess. (Comm. Print 1952). Congress took cognizance of these complaints and incorporated many of them in the Internal Revenue Code of 1954, but no change was made in the required degree of tax avoidance purpose.[9] Rather, the changes, which were generally favorable to the taxpayer,[10] demonstrated congressional disaffection with the effect of the tax and its emphasis on intent. Congress' reaction to the complaints was to emphasize the reasonable needs of the business as a proper purpose for corporate accumulations[11] and to make it easier for the

---

[9] Congress was urged to adopt a test of purpose similar to that proposed by respondent in the present case. See, *e. g.*, Hearings before the House Committee on Ways and Means Pertaining to the General Revision of the Internal Revenue Code, 83d Cong., 1st Sess., pt. 3, p. 2142 (1953).

[10] The changes were expected to decrease revenues by $10,000,000 in fiscal year 1955. See S. Rep. No. 1622, 83d Cong., 2d Sess., 72 (1954).

[11] Section 535 (c) provided a credit for such accumulations.

taxpayer to prove those needs.[12] As the House Ways and Means Committee said, "Your committee believes it is necessary to retain the penalty tax on unreasonable accumulations as a safeguard against tax avoidance. However, several amendments have been adopted to minimize the threat to corporations accumulating funds for legitimate business purposes . . . ." H. R. Rep. No. 1337, 83d Cong., 2d Sess., 52 (1954).

As this brief summary indicates, the legislative history of the accumulated earnings tax demonstrates a continuing concern with the use of the corporate form to avoid income tax on a corporation's shareholders. Numerous methods were employed to prevent this practice, all of which proved unsatisfactory in one way or another. Two conclusions can be drawn from Congress' efforts. First, Congress recognized the tremendous difficulty of ascertaining the purpose of corporate accumulations. Second, it saw that accumulation was often necessary for legitimate and reasonable business purposes. It appears clear to us that the congressional response to these facts has been to emphasize unreasonable accumulation as the most significant factor in the incidence of the tax. The reasonableness of an accumulation, while subject to honest difference of opinion, is a much more objective inquiry, and is susceptible of more effective scrutiny, than are the vagaries of corporate motive.

Respondent would have us adopt a test that requires that tax avoidance purpose need be dominant, impelling, or controlling. It seems to us that such a test would exacerbate the problems that Congress was trying to

---

[12] Section 534 allowed the taxpayer to shift to the Commissioner in certain instances the burden of proving unreasonable accumulation. Section 537 included anticipated needs as reasonable needs of the business. In addition to those changes, § 533 (a) omitted the requirement that the taxpayer negate the existence of tax avoidance purpose by a "clear preponderance of the evidence," and substituted a "preponderance" test.

avoid. Rarely is there one motive, or even one dominant motive, for corporate decisions. Numerous factors contribute to the action ultimately decided upon. Respondent's test would allow taxpayers to escape the tax when it is proved that at least one other motive was equal to tax avoidance. We doubt that such a determination can be made with any accuracy, and it is certainly one which will depend almost exclusively on the interested testimony of corporate management. Respondent's test would thus go a long way toward destroying the presumption that Congress created to meet this very problem. As Judge Learned Hand said of the much weaker presumption contained in the Revenue Act of 1921, § 220, 42 Stat. 247, "[a] statute which stands on the footing of the participants' state of mind may need the support of presumption, indeed be practically unenforceable without it . . . ." *United Business Corp.* v. *Commissioner,* 62 F. 2d 754, 755 (C. A. 2d Cir. 1933). And, "[t]he utility of . . . [that] presumption . . . is well nigh destroyed if . . . [it] is saddled with requirement of proof of 'the primary or dominant purpose' of the accumulation." *Barrow Mfg. Co.* v. *Commissioner,* 294 F. 2d 79, 82 (C. A. 5th Cir. 1961), cert. denied, 369 U. S. 817 (1962).

The cases cited by respondent do not convince us to the contrary. For the most part, they lack detailed analysis of the precise problem. Perhaps the leading case for respondent's position is *Young Motor Co.* v. *Commissioner,* 281 F. 2d 488 (C. A. 1st Cir. 1960). That case relied in part upon the use of the article "the" instead of "a." We have previously rejected that argument. The case also relied, as did the court below, on certain cases from the gift and estate tax areas.[13] We find those cases inappo-

---

[13] *Commissioner* v. *Duberstein,* 363 U. S. 278 (1960); *Allen* v. *Trust Co. of Georgia,* 326 U. S. 630 (1946); *City Bank Farmers Trust Co.* v. *McGowan,* 323 U. S. 594 (1945); *United States* v. *Wells,* 283 U. S. 102 (1931).

site. They deal with areas of the Code whose language, purpose, and legislative history are entirely different from those of the accumulated earnings tax. See *Commissioner* v. *Duberstein,* 363 U. S. 278, 284 (1960).

Finally, we cannot subscribe to respondent's suggestion that our holding would make purpose totally irrelevant. It still serves to isolate those cases in which tax avoidance motives did not contribute to the decision to accumulate. Obviously in such a case imposition of the tax would be futile. In addition, "purpose" means more than mere knowledge, undoubtedly present in nearly every case. It is still open to the taxpayer to show that even though knowledge of the tax consequences was present, that knowledge did not contribute to the decision to accumulate earnings.

*Reversed and remanded.*

MR. JUSTICE HARLAN, whom MR. JUSTICE DOUGLAS and MR. JUSTICE STEWART join, concurring in part and dissenting in part.

I agree with the Court that the Court of Appeals erred in framing its remand order in this case. However, I would modify the order in a different way, which I find more in harmony with the statutory scheme than the one the Court has chosen.

Section 532 of the Internal Revenue Code of 1954 states in relevant part:

> "The accumulated earnings tax imposed by section 531 shall apply to every corporation . . . formed or availed of for the purpose of avoiding the income tax with respect to its shareholders . . . , by permitting earnings and profits to accumulate instead of being divided or distributed."

Section 533 (a) provides:

> "For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to

accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary."

Our task is to decide what jury instruction with respect to the definition of "purpose" comports best with Congress' intent as revealed by this statutory language and the underlying legislative history.

I am in accord with much of the Court's opinion. I too find that the successive changes in the wording of the statute, even when read together with the legislative history, do not help in our inquiry. I too find that the legislative history reveals a progressive congressional intention to rely more and more heavily upon a comparatively objective criterion: whether the accumulated earnings were in excess of the corporation's reasonable business needs. Nevertheless, it is apparent from the language of § 533 (a), and from the legislative materials, that Congress chose still to give the taxpayer a "last clear chance" to prove that, despite the unreasonableness of the accumulation by business standards, the accumulation was not due to the proscribed purpose. My difficulty with the instruction approved by the Court is that in most instances it will effectively deny to the taxpayer the "last clear chance" which Congress clearly meant to afford and substitute a very fuzzy chance indeed.

I reach this conclusion on what I regard as common-sense grounds. In practice, the accumulated-earnings provisions are applied only to closely held corporations, controlled by relatively few shareholders.[1] As the Court admits, the shareholders almost always will have been advised that accumulation of corporate earnings will

---

[1] See S. Rep. No. 1622, 83d Cong., 2d Sess., 69 (1954); B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders 213–214 (2d ed. 1966).

result in individual tax savings. That fact will be before the jury. In accord with the Court's decision, the jury will be instructed that "it is sufficient if [avoidance of shareholders' tax] is *one* of the purposes of the company's accumulation policy." (Emphasis supplied.)

Under these circumstances, the jury is very likely to believe that it must find the forbidden purpose and impose the tax whenever the Government shows that the taxpayer has accumulated earnings with knowledge of the resultant tax saving, irrespective of any contrary evidence put forward by the taxpayer. The approved instruction simply tells the jury that the taxpayer must have had a "purpose" to avoid individual taxes. In everyday speech, we commonly say that a person has a "purpose" to do something when he acts with knowledge that the thing will inevitably result. Even were the jury legally knowledgeable, it might reach the same conclusion, for, assuming that the word "purpose" as used in § 532 is synonymous with "intention," [2] there is ample authority for the proposition that an actor will be deemed to have an "intention" to cause consequences of an act if "the actor . . . believes that the consequences are substantially certain to result from [the act]." [3] To confront the taxpayer with this likelihood that its evidence of another purpose will be entirely disregarded is incon-

---

[2] "Purpose" is listed as a synonym for "intention" in Black's Law Dictionary, at 948 (4th ed. 1968). Many courts have used the two words interchangeably in construing §§ 532 and 533 (a). See, *e. g.,* *Henry Van Hummell, Inc.* v. *Commissioner,* 364 F. 2d 746 (1966); *Youngs Rubber Corp.* v. *Commissioner,* 331 F. 2d 12 (1964); *Smoot Sand & Gravel Corp.* v. *Commissioner,* 241 F. 2d 197 (1957); *Harry A. Koch Co.* v. *Vinal,* 228 F. Supp. 782 (1964); *Motor Fuel Carriers, Inc.* v. *United States,* 202 F. Supp. 497 (1962), vacated on other grounds, 322 F. 2d 576 (1963).

[3] Restatement (Second), Torts § 8 A (1965). See also *id.,* Comment *b;* R. Perkins, Criminal Law 657–658 (1957); Cook, Act, Intention, and Motive in the Criminal Law, 26 Yale L. J. 645 (1917).

sistent with the provision of § 533 (a) which explicitly affords the taxpayer an opportunity to avoid the tax by showing "by the preponderance of the evidence" that it had a "contrary" purpose.

The Court, while conceding that the shareholders will know of the expected tax saving "in nearly every case," see *ante,* at 309, reasons that the taxpayer will have its opportunity because "[i]t is still open to the taxpayer to show that even though knowledge of the tax consequences was present, that knowledge did not contribute to the decision to accumulate earnings." *Ibid.* If, as appears from the Court's opinion, this exegesis is not to be a part of the jury instruction, then the Court is simply engaging in wishful thinking. If by chance the explication is to be included in the instruction, then the jury will be told to impose the tax only if it finds that a desire to avoid tax "contribute[d] to the decision to accumulate earnings." Such an instruction would at least inform the jury that the tax consequence must actually have been in the shareholders' minds when they decided to accumulate. However, once the shareholders are shown to have had knowledge of the tax saving, it still will be extraordinarily difficult for the taxpayer to convince the jury that the knowledge did not play some part, however slight, in the decision. Again, it seems to me that such an instruction would not give proper scope to the congressional intention that the taxpayer have a chance to prove "by the preponderance of the evidence" that it had a "contrary" purpose. I would therefore adopt an instruction less loaded against the taxpayer.

The Court of Appeals for the Sixth Circuit decided, and respondent argues, that the tax should apply only if the jury finds that tax avoidance was the "dominant, controlling, or impelling motive" for the accumulation. I agree with the Court that such an instruction would

313

be improper. It apparently would require the Government to show that tax avoidance was stronger than any other motive, and perhaps that it was stronger than all other motives put together. This would largely negate the statutory presumption of improper purpose contained in § 533 (a). In my view, it would also result in non-imposition of tax in cases where Congress meant there to be liability, for I think that Congress must at least have intended that the tax should apply whenever the taxpayer would have distributed, instead of accumulating, corporate earnings had there been no possibility of a tax saving.

These considerations suggest what I believe to be the best rule: the jury should be instructed to impose the tax if it finds that the taxpayer would not have accumulated earnings but for its knowledge that a tax saving would result. This "but for cause" test would be consistent with the statutory language. It would allow the Government to succeed if it could show, with the aid of the § 533 (a) presumption, that without the spur of tax avoidance the taxpayer would not have accumulated the earnings, thus giving effect to the presumption and fulfilling Congress' desire to penalize those with a "purpose" to avoid the tax. It would permit the taxpayer to escape the tax if it could convince the jury that for other, perhaps irrational, reasons it would have accumulated even had no tax saving been possible, thus affording the opportunity for proof of a "contrary" purpose which Congress intended to provide. In addition, I believe that this instruction would be relatively easy for a jury to understand and apply. For all of these reasons, I consider it preferable to the standard adopted by the Court.