**NETWORK SYSTEMS CORPORATION**

v.

**UNITED STATES of America.**

**No. 4–91–CV–869.**

United States District Court,
D. of Minn.,
Fourth Division.

Feb. 18, 1993.

Clinton A. Schroeder, Myron L. Frans, Gray Plant Mooty Mooty & Bennett, Minneapolis, MN, Gregory A. Markel, John Houston Pope, Davis Markel & Edwards, New York City, Malcolm D. Reid, Minneapolis, MN, for plaintiff.

Robert Michael Small, Asst. U.S. Atty., Minneapolis, MN, S. Hollis Fleischer, U.S. Dept. of Justice, Tax Div., Rachel D. Cramer, U.S. Dept. of Justice, Tax Division, Washington, DC, for defendant.

## ORDER

ROSENBAUM, District Judge.

Plaintiff seeks judgment on the pleadings on Counts I, II, and III of its complaint, pursuant to Rule 12(c), Federal Rules of Civil Procedure (Fed.R.Civ.P.). Plaintiff asks for return of certain taxes, interest, and penalties paid, under protest, for tax years 1983, 1984, and 1985. The Court heard argument on October 30, 1992. Plaintiff has presented, and the Court has considered, matters outside the pleadings. Therefore, the motion is considered as one for summary judgment under Rule 56, Fed.R.Civ.P. *See* Fed. R.Civ.P. 12(c).

*Background*

Plaintiff, Network Systems Corporation (Network Systems), is a "high tech" company engaged in information processing and computer interconnection. It is a widely held public corporation having between 10,000 and 17,000 shareholders. The plaintiff's shares are publicly traded through NASDAQ or over the counter. Network Systems is incorporated in Delaware, and has its principal place of business in Minneapolis, Minnesota. The defendant is the United States of America, on behalf of its revenue-collecting agency, the Internal Revenue Service (IRS). This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1346(a)(1).

Plaintiff filed its corporate tax returns for the 1983, 1984, and 1985 tax years on a timely basis and paid the taxes reported due on those returns. On December 9, 1988, however, the IRS proposed the assessment of an accumulated earning tax (AET), pursuant to the Internal Revenue Code, 26 U.S.C. §§ 531–537 (the code). In March, 1989, plaintiff filed its protest of the proposed tax, interest, and penalties. The protest was rejected and, on May 14, 1992, the IRS issued a notice of deficiency and assessed an AET against the plaintiff—$2,587,363 for 1983, $4,470,864 for 1984, and $3,907,815 for 1985. Plaintiff paid the assessed sums in full and filed its claim for a refund in August, 1991. The IRS disallowed the claim in September, 1991, which cleared the way for plaintiff to file this action in the United States District Court on October 18, 1991. *See* 26 U.S.C. § 7422.

Network Systems asks this Court to return the assessed AET, plus interest. Plaintiff first argues that, prior to the Tax Reform Act of 1984, the AET was inapplicable to widely held corporations. Plaintiff claims that, with the enactment of the 1984 Act, the only widely held corporations to which the AET applies are investment corporations specifically formed to avoid taxes. It is plaintiff's position that the AET may not be applied to operating corporations such as plaintiff's. Second, and assuming the AET is applicable to publicly held operating corporations, plaintiff denies any intent to evade taxes. Third, plaintiff contends that the code contemplates a tax on accumulated earnings and profits, as opposed to a tax on net liquid assets. Plaintiff claims the IRS has confused shareholders' share-purchase payments with accumulated earnings. The defendant objects to plaintiff's motion, and asserts that the AET assessment was proper.

*Analysis*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The adverse party must produce concrete facts demonstrating that there is a genuine issue for trial. *Id.* Here, the facts are not in dispute. The sole question presented is whether the IRS properly applied 26 U.S.C. § 531–537 in assessing plaintiff's AET.

For the purposes of this motion, the Court assumes, but explicitly declines to rule, that the AET is applicable to publicly held corporations. But even this operational determination does not save the IRS's assessment. It is the Court's view that the IRS has wholly misconstrued its statutory mandate and fatally confused the concepts of net liquid assets and "accumulated earnings." The Court finds that due to this confusion, the IRS's assessment was illegal and the sums collected along with interest thereon are to be returned to plaintiff.

The IRS's confusion was clear at oral argument when counsel for the service acknowledged two possible theories which might underlie the excess earnings tax.

- **The First Theory:** Congress imposed the AET on corporations holding assets used by shareholders as personal property. These corporations gave their shareholders the present use and enjoyment of "corporate assets" without passing these assets through as dividends, thus avoiding the "double taxation" on corporate profits. Under this theory, the AET discourages such conduct and penalizes tax avoidance.

- **The Second Theory:** Congress imposed the AET as a tax on pooled assets in a corporate treasury. Congress sought to tax accumulated dollars, whether they came from operations, profits, or paid-in capital. Under this theory, the tax encourages the circulation of money. If funds are pooled in a corporation, they are subject to taxation and penalty.

Counsel for the government urged the Court to adopt the latter theory. The Court declines the IRS's invitation.

■ Contrary to the IRS's position, the statute makes clear that the tax is imposed on the accumulated taxable income of corporations "formed or availed of for the purpose of avoiding the income tax with respect to [their] shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed." 26 U.S.C. §§ 532(a). The tax is considered a penalty and is therefore to be strictly construed. *Snow Mfg. Co. v. Commr.,* 86 T.C. 260, 269 (1986) (*citing Ivan Allen Co. v. United States,* 422 U.S. 617, 626, 95 S.Ct. 2501, 2505, 45 L.Ed.2d 435 (1975)).

■ Here, the IRS attempted to determine whether plaintiff's accumulated earnings and profits exceeded its reasonable business needs for the relevant tax years. This they are permitted to do. *See* 26 U.S.C. § 533(a).[1] The IRS erred, however, when it looked past the corporation's accumulated earnings and profits, and taxed its net liquid assets.

Accumulated earnings and profits, and net liquid assets, are distinct concepts in tax law. *See Hughes, Inc. v. Commr.,* 90 T.C. No. 1 n. 16 (1988) (*citing Snow,* 86 T.C. at 278). As explained in *Hughes* and *Snow,* "accumulated earnings and profits is the historical net increase in a corporation's capital above stockholders' contributions to capital," while "net liquid assets or working capital is the excess of current assets over current liabilities." *Id.* The IRS does not contest the fact that it included as "earnings" the sums shareholders paid into the corporate treasury for shares purchased in the tax years in question.[2] When a corporation sells new common stock to the public, as the plaintiff did in 1983 and 1985, the funds, if held in the corporate treasury, are part of the corporation's net liquid assets. They do not, however, constitute accumulated earnings and profits.

The central dispute, then, concerns whether the IRS improperly compared net liquid

---

1. Section 533(a) of the code provides in pertinent part:
   [T]he fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable business needs of the business shall be determinative of the purpose to avoid the income tax ... unless the corporation by the preponderance of the evidence shall prove to the contrary." 26 U.S.C. § 533(a).

2. At the end of 1983, Network Systems's accumulated contributions to capital exceeded $60,-320,000. Of this amount, $31,600,000 came from public offering funds raised in 1983. As of the end of 1984, paid-in capital exceeded $61,-038,000. By the end of 1985, the figure was approximately $88,665,000, the company having raised $26 million in a 1985 public offering.

assets, including contributions to capital, to plaintiff's reasonable business needs in calculating the AET.[3]

The Tax Court squarely addressed this issue in *Snow*. The Court held that where net liquid assets exceed accumulated earnings and profits, the reasonable needs of the business should be compared with accumulated earnings and profits. *Id.* at 279. The *Snow* court reasoned that where net liquid assets exceed accumulated earnings and profits, net liquid assets are reflected in the full amount of accumulated earnings and profits. *Id.* The Court stated that the government's position "in essence renders the amount of accumulated earnings and profits irrelevant under section 533(a) where it is lesser in amount than net liquid assets. The code provides no support for this position." *Id.* The Court accepts *Snow* and finds that, for AET purposes, capital contributions must be excluded from accumulated earnings where, as here, net liquid assets exceed accumulated earnings and profits.[4]

The IRS's theory in this case would impose a tax penalty on shareholders' stock-purchase contributions. This cannot be reconciled with the statutory language, statutory purpose, or common sense. The code, at § 532(a), provides that the tax shall apply to corporations which avoid shareholder income taxes "by permitting *earnings and profits* to accumulate." 26 U.S.C. § 532(a) (emphasis added). The statutory presumption of a corporate purpose to avoid taxes arises where the corporation's *"earnings and profits"* are permitted to accumulate beyond reasonable business needs. 26 U.S.C. § 533 (emphasis added). The statutory purpose is " 'to compel the company to distribute any *profits* not needed for the conduct of its business.' " *United States v. Donruss Co.,* 393 U.S. 297, 303, 89 S.Ct. 501, 504, 21 L.Ed.2d 495 (1969) (quoting *Helvering v. Chicago Stock Yards*

*Co.,* 318 U.S. 693, 699, 63 S.Ct. 843, 845, 87 L.Ed. 1086 (1943) (emphasis added)).

Capital contributions cannot be characterized as "profits," and are not ordinarily subject to distribution as dividends to shareholders. "The ultimate question upon which imposition of the tax rests," according to the *Snow* court, "is whether tax avoidance with respect to shareholders was one of the purposes of a corporate accumulation." *Snow,* 86 T.C. at 269 (*citing Donruss, supra,* 393 U.S. at 301, 89 S.Ct. at 503). In this Court's view, there is no reasonable or statutory basis to assume that this corporation is attempting to avoid taxes by accumulating shareholder capital contributions.

The Court takes judicial notice of the fact that Network Systems is engaged in a front-line technology business. Scientific advances, changing technologies, or adoption of a mistaken corporate strategy can wipe out the most prosperous business in its field— seemingly overnight. The field is littered with the bones of Leading Edge Technology, Supercomputer System, Inc. (Dr. Steve S. Chen's "SSI"), Osborne Computer, and hundreds of other companies. Even IBM, with its legendary cash and market position, has been under extreme stress. The Court is not surprised that in this business environment a company like Network Systems would seek to build an "impregnable" gird of cash and liquid assets to protect itself in the marketplace.

The IRS and the courts are ill-equipped to substitute their business judgment for that of the management and the investors in a market oriented corporation. Corporate managers, who are presumably intimately familiar with their own industry and operations, are in a far better position to determine their capital needs than are federal tax examiners or judges.

---

3. Plaintiffs assume, for the purposes of this motion only, that the IRS's calculation of its reasonable business needs is correct.

4. The only case which the IRS advances in support of its theory that paid-in capital is equivalent to accumulated earnings and profits is *D.G. Matthews & Son, Inc. v. United States,* 448 F.Supp. 948 (E.D.N.C.1977). In that case, which

the Court finds wholly inapposite, the paid-in capital was land, livestock, crops, and marketable securities, which were given in purchase of the shares of a closely held, family-owned corporation. The Court finds the analogy between this modern 'cutting-edge corporation and the plaintiff in *D.G. Matthews* to be strained in the extreme.

Accordingly, based upon the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED that:

Plaintiff's motion for summary judgment is granted. Judgment is entered in favor of the plaintiff and against the defendant, as to Counts I, II, and III of the complaint, in the amount of $10,966,042, plus statutory interest, costs, and expenses.