**NARRAGANSETT WIRE CO.,
Petitioner, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee.**

**No. 73-1340.**

United States Court of Appeals,
First Circuit.

Argued Jan. 10, 1974.

Decided Feb. 8, 1974.

Alan P. Cusick, Providence, R. I., for petitioner-appellant.

Robert S. Watkins, Atty., Tax Div., Dept. of Justice, with whom Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, and Bennet N. Hollander, Attys. Tax Div., Dept. of Justice, were on brief, for respondent-appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This appeal is from a Tax Court decision sustaining the Commissioner's determination of a $46,213.61 deficiency in taxpayer's return for 1966, which for the period from July 1–December 31 was consolidated with that of an affiliate, Transarizona Resources, Inc.[1] Taxpayer contends first, that a consent to extension of the statute of limitations signed by its president was invalid and therefore the determination of deficiency was barred, and second, that expenses of a receiver in charge of Transarizona assets between February 1963 and Novem-

1. T.C.Memo. 1973–135.

ber 1966 were properly deducted on the consolidated return as ordinary and necessary business expenses of the affiliate which accrued after July 1, 1966. We reject both contentions and affirm the Tax Court's decision.

■■ With respect to the first contention, taxpayer timely filed its return on May 17, 1967, so that absent further action the statute of limitations on assessment of additional taxes would have expired three years later on May 17, 1970. Int.Rev.Code of 1954, § 6501(a). However, on March 10, 1970, taxpayer's president, at the Commissioner's request, consented in writing to an extension of the limitations period until June 30, 1971. *See* Int.Rev.Code of 1954, § 6501(c)(4) (authorizing extensions). Therefore, the notice of deficiency, issued May 17, 1971, was not barred by the statute of limitations unless the president's consent to extension was for some reason invalid.

In contending that the consent was invalid, taxpayer does not claim that its president lacked the power to sign a consent on behalf of the corporation.[2] Nor does taxpayer claim that the Internal Revenue Service pressured the president into signing before he could consult with others.[3] Instead, taxpayer cites the undisputed fact that it had previously designated an individual to act as its representative in proceedings before the Commissioner,[4] and argues that the Commissioner was obligated to request extensions of the statute of limitations only from such representative and not from any other corporate officer, including the president. Although no provision of the tax code or the regulations creates such obligation, taxpayer finds it implicit in a procedural rule of the Internal Revenue Service, 26 C.F.R. § 601.-505(b) (1973).[5] Because the Commissioner, by requesting the consent directly from the president, breached this alleged obligation, taxpayer claims that the consent so obtained was invalid.

The short answer to this contention is that taxpayer's representative learned well before the original limitations period had expired that the president had executed the requested waiver. Yet instead of complaining about its alleged invalidity because requested of and executed by the president rather than himself, the representative entered into a discussion with the Service as to the waiver's legal meaning. This implied recognition by him of the basic validity of the waiver, in spite of the manner of its presentation, until after the period of limitations had expired constitutes a clear case of estoppel against the taxpayer. *See* Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); Bergeron v. Mansour, 152 F.2d 27, 30 (1st Cir. 1945).[6]

Taxpayer's second contention, concerning deductibility of receiver's expenses of its affiliate, arises from the following facts. Transarizona was organized as

2. The president of a corporate taxpayer ordinarily does possess the power to sign a consent form on behalf of it. Liberty Baking Co. v. Heiner, 37 F.2d 703, 704 (3d Cir. 1930).

3. The consent form was left at taxpayer's corporate offices on February 19, 1970. Thus, nineteen days elapsed until the president signed, during which time he was free to consult anyone.

4. Procedures for designating a representative are set forth in 26 C.F.R. §§ 601.502–.504 (1973).

5. The rule does not expressly impose the requirement which taxpayer asserts with respect to statutes of limitations. Instead, it provides that where a taxpayer's representative unreasonably delays or hinders a tax examination or investigation by failing to furnish, after repeated request, necessary nonprivileged information, revenue agents can contact the taxpayer directly for such information. However, the rule is entitled, "Cases where taxpayer may be contacted directly," and thus may well contain a negative pregnant to the effect that in cases not meeting its specifications the taxpayer may not be contacted directly. We need not decide this question, in view of our holding that taxpayer is estopped from raising it.

6. We express no view on the Tax Court's holding that procedural rules such as § 601.-505(b) are merely "directory" in legal effect and thus violation of one will not bar valid assessment of a deficiency. Luhring v.

an Arizona corporation in 1956 for the purpose of engaging in copper mining. On October 4, 1962, it was petitioned into receivership by its principal creditor, Southern Arizona Bank & Trust Co. (the Bank). By this time Transarizona had ceased mining operations. On October 15, 1962, the Superior Court of Arizona appointed one Owens as receiver, with authority "to incur such expenditures as may be necessary for the preservations [sic] and conservation of [Transarizona] property." However, the former principal shareholder of Transarizona [7] refused to reimburse Owens for any such expenses, thus threatening his ability to carry out the court's mandate. As a consequence, the Bank assumed the responsibility of supporting the receiver's activities, obviously hoping in that way to preserve the value of its claims against Transarizona. In February 1963, Bank officials and Owens arrived at an informal understanding that the latter would finance his own activities as receiver and be reimbursed by the Bank at some later date. During the next three years the receiver's primary activity consisted of trying to find a buyer for Transarizona's dormant property. He failed to do so. Transarizona never resumed mining operations during this period.

Taxpayer entered the picture on January 21, 1966, when it replaced the Bank as principal creditor of Transarizona by purchasing the Bank's claims, and related mortgages. The purchase agreement included the following provision:

"6. Southern Arizona Bank & Trust Company hereby agrees that upon payment of the sum hereinabove set forth by Narragansett Wire Co., that it will release Narragansett Wire Co., its successors and assigns, from all obligations due for any purpose, service, or expenses heretofore incurred in connection with all notes and mortgages described in paragraph 2. above, and all attorneys fees, receiver's fees, commissions, interests, and costs incurred by any of the signatories in Cause # 16997, Superior Court of the State of Arizona, in and for the County of Pinal, as above stated. Holesapple, Conner, Jones, McFall, & Johnson, Sherwood B. Owens, and Myles C. Stewart, and each of them hereby agrees with Narragansett Wire Co. that they will look entirely to Southern Arizona Bank & Trust Company for payment of their fees, commissions, costs, and expenses as said hereinabove and will not assert any claim therewith against Narragansett Wire Co."

Three days later, on January 24, the Bank paid Owens the sum of $136,875 for his expenses as receiver during the preceding three years. Thereafter, during the remainder of 1966, taxpayer paid Owens on a monthly basis the total additional sum of $10,254.57. Owens' services during this later period continued to be administrative and advisory, as Transarizona still failed to resume operations. On July 1, 1966, taxpayer acquired 100 percent of Transarizona's common stock, and thus was entitled to file a consolidated return with Transarizona for the ensuing period, July 1–December 31. The receivership formally ended November 9, 1966, at which time the superior court gave final approval to Owens' submitted expenses extending back to February 1963.

In its consolidated return for the period July 1–December 31, 1966, taxpayer sought to deduct a total of $147,129.57 in receiver's expenses as a business expense of Transarizona pursuant to Int.Rev.Code of 1954, § 162(a). In other words, taxpayer sought to deduct all sums paid to Owens during 1966 by both itself and the Bank, such sums covering services rendered since February 1963.

Glotzbach, 304 F.2d 560 (4th Cir. 1962). It may be, however, that a violation of a procedural rule which is shown to have prejudiced a taxpayer's position would bar subsequent assessment of a deficiency. *Cf.* United States v. Leahey, 434 F.2d 7 (1st Cir. 1970).

7. This shareholder was Transcontinental Resources, Ltd., a Canadian corporation, which owned 78.2 percent of Transarizona shares.

The Commissioner disallowed these claimed deductions in their entirety and the Tax Court sustained that determination.

 In order for an item to be deducted under § 162(a), taxpayer must show that it was an "expense" both "ordinary" and "necessary," which was "paid or incurred during the taxable year" for "carrying on any trade or business." Commissioner v. Lincoln Savings & Loan Ass'n, 403 U.S. 345, 352, 91 S.Ct. 1893, 1898, 29 L.Ed.2d 519 (1971).

With respect to the $136,875 payment to Owens by the Bank in January 1966, the Tax Court found as a fact that the receiver's expenses which this payment covered had been assumed by the Bank and thus could not be an "expense" deductible by Transarizona. This finding was amply supported by the agreement itself and by the testimony of Owens. It surely was not "clearly erroneous" and must be affirmed. *See* Crepeau v. Commissioner, 438 F.2d 1228 (1st Cir. 1971) (per curiam).

With respect to the total of $10,254.57 paid by taxpayer to Owens during the remainder of 1966, we can assume *arguendo* that these payments were made on behalf of Transarizona and thus unlike the January payment, represented an "expense." However, we agree with the Tax Court that taxpayer has failed to show that these payments to the receiver were for the purpose of "carrying on any trade or business." The Commissioner has long held that only those expenses of a receiver "incurred in carrying on the business of the bankrupt taxpayer" are deductible by such taxpayer under § 162(a) or its precursor statutes. I.T. 2004, III–1 Cum. Bull. 292 (1924). *See also* 4A J. Mertens, The Law of Federal Income Taxation, § 25.58 (1972 rev.). In the instant case, it is agreed that Transarizona never resumed mining operations during the course of the receivership. Instead, the receiver's primary function was to locate a prospective purchaser for the company or its assets. Following the sale of the Bank's claims to taxpayer, the receiver continued to provide solely administrative or advisory services until the receivership formally ended in November 1966. Nowhere in the record has taxpayer shown that its payments to Owens reflected expenses he had incurred in carrying on the business of Transarizona. The plain fact is that Transarizona did not carry on business.

In view of the preceding holdings, we need not reach the issue of whether the receiver's expenses, if otherwise deductible, accrued to Transarizona during the relevant tax period, July 1–December 31, 1966.

Affirmed.