DEVINEY CONSTRUCTION CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Deviney Constr. Co. v. Commissioner
Docket No. 9264-72.
United States Tax Court
T.C. Memo 1976-386; 1976 Tax Ct. Memo LEXIS 18; 35 T.C.M. (CCH) 1742; T.C.M. (RIA) 760386; December 16, 1976, Filed S. L. Warhaftig, for the petitioner. Vallie C. Brooks, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioner's Federal income tax for the taxable year ended August 1, 1968, in the amount of $196,246.47. The issues presented for decision are as follows: (1) Whether respondent is estopped from reopening petitioner's case for the taxable year ended August 1, 1968, after it was closed in accordance with an agreement reached at a district conference; (2) Whether the accumulation by petitioner of its earnings and profits beyond the reasonable needs of its business had as one of its purposes the avoidance of income tax with respect to its shareholders; and (3) Whether two transfers *21 made by petitioner to its sole shareholder within 2-1/2 months after the close of its taxable year ended August 1, 1968, constitute dividends, thus entitling petitioner to a dividends paid deduction under sections 561[1] and 563(a). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, supplemental stipulation of facts, and the attached exhibits are incorporated by this reference. Deviney Construction Co., Inc., the petitioner herein, is a corporation organized under the laws of the State of Mississippi on August 31, 1951. At the time the petition was filed, its principal place of business was Jackson, Mississippi. Petitioner filed its Federal income tax return for the taxable year ended August 1, 1968, with the Internal Revenue Service Center, Chamblee, Georgia, utilizing the cash receipts and disbursements method of accounting. Since its inception, petitioner has been engaged in the business of performing construction work for public utility companies. W. C. Deviney, Sr., and his wife, Louise N. Deviney, were owners of all the *22 outstanding common stock of petitioner from the date of its incorporation until August 2, 1968, when their stock was purchased by Struthers Wells Corporation (hereinafter Struthers), a Maryland corporation having its principal office in Warren, Pennsylvania. During such time Mr. Deviney served as president of petitioner and Mrs. Deviney served as secretary-treasurer. For the taxable years ended September 30, 1962 through August 1, 1968, petitioner reported the following amounts of taxable income on its Federal income tax returns: 9/30/62
9/30/63
9/30/64
9/30/65
Income: Gross receipts
$1,491,912.21
$1,313,501.52
$2,496,183.50
$3,248,248.44
Less: Cost of Sales
1,075,336.02
971,284.03
1,753,896.59
2,322,143.17
Gross profit
$ 416,576.19
$ 342,217.49
$ 742,286.91
$ 926,105.27
Other gains or
( 223.20)
710.41
-0-
( 704.29)
(losses)
Total income
$ 416,352.90
$ 342,927.90
$ 742,286.91
$ 925,400.98
Expenses: Officers'
$ 31,600.00
$ 21,600.00
$ 41,600.00
$ 31,600.00
Compensation
Other salaries and
wages
18,502.23
65,761.00
109,066.66
138,231.09
Taxes
70,485.01
82,065 .92
133,035.40
193,350.69
Interest
4,563.87
6,924.61
5,900.10
1,998.54
Contributions
90.00
175.00
25.00
2,315.00
Depreciation
8,434.34
8,755.20 7,550.90
6,914.36
Advertising
55.00
34.30
109.03
80.00
Other deductions
91,286.14
78,999.07
127,761.02
150,775.56
Total expenses
$ 225,016.59
$ 264,315.10
$ 425,048.11
$ 525,265.22
Taxable income
$ 191,336.31
$ 78,612.80
$ 317,238.80
$ 400,135.76
*23 9/30/66
9/30/67
8/1/68 *
Income: Gross receipts
$4,012,049.42
$5,857,071.33
$4,314,917.27
Less: Cost of Sales
3,109,580.85
3,881,204.54
2,580,620.80
Gross profit
$ 902,468.57
$1,975,866.79
$1,734,296.47
Other gains or
-0-
( 3,274.96)
-0-
(losses)
Total income
$ 902,468.57
$1,972,591.83
$1,734,296.47
Expenses: Officers'
$ 31,600.00
$ 66,600.00
$ 18,000.00
Compensation
Other salaries and
wages
100,146.40
244,335.50
176,982.93
Taxes
244,022.25
305,297.43
263,541.27
Interest
20.67
4,033.36
18.66
Contributions
2,501.00
1,640.00
-0-
Depreciation
8,655.99
12,099.61
13,484.97
Advertising
30.00
225.65
-0-
Other deductions
197,925.53
234,006.27
267,618.13
Total expenses
$ 584,901.84
$ 868,235.82
$ 739,645.96
Taxable income
$ 317,566.73
$1,104,354.01
$ 994,650.51
Schedule L of petitioner's Federal income tax return for the taxable year ended August 1, 1968, reflected current assets of $1,794,585.33 as *24 of the end of the taxable year, including cash in the amount of $1,631,366.33, current liabilities of $3,339.24, and undistributed earnings of $2,463,245.97. From the date of its incorporation through August 1, 1968, petitioner never declared a dividend. Petitioner was controlled by W. C. Deviney, Sr., from the date of its incorporation in 1951 until August 1, 1968. At the close of the taxable year ended August 1, 1968, Mr. Deviney had no plans for the use of petitioner's retained earnings other than to meet working capital needs and to provide for normal business increases. At the time he offered his stock for sale in September 1967, Mr. Deviney believed that he would receive a higher price for his stock if the retained earnings in the form of cash in the corporation were not distributed to its stockholders. During the fall of 1967, Struthers commenced negotiations with Mr. and Mrs. Deviney for the purchase of all of the outstanding stock of petitioner. In negotiating for the purchase of the stock of petitioner, Struthers insisted that petitioner retain all of its cash rather than distributing it as dividends. At the time the negotiations took place, Struthers was operating *25 at a loss, its cash position was tight, and it was required to obtain approval from two banks to which it was indebted prior to acquiring or disposing of a subsidiary or a major asset. Approval of the acquisition of the stock of petitioner was obtained from the two banks on the condition that cash not be distributed as dividends prior to the sale. On August 2, 1968, Struthers purchased all of the stock of petitioner from Mr. and Mrs. Deviney for $2,850,000, of which $605,500 was paid in cash and the balance by the delivery of two promissory notes in the principal amounts of $894,500 and $1,350,000, respectively. The note for $894,500 was due on January 2, 1969, and the note for $1,350,000 was an installment note requiring four equal installment payments of $337,500 due on July 31, 1969, 1970, 1971 and 1972. The promissory note in the amount of $1,350,000 provided that petitioner would not make any distributions or loans to Struthers or its affiliates which would reduce the "aggregate net worth" of petitioner below an amount equal to the outstanding principal amount of the note plus accrued interest. In connection with the sale of the stock, petitioner sold to Magnolia Tree Service, *26 Inc., a Mississippi corporation wholly owned by Mr. and Mrs. Deviney, for $78,967.90 property which had a fair market value of $278,382.40. The purchase agreement contained a representation and warranty that since March 31, 1968, the date the certified financial statements of petitioner were delivered to Struthers, petitioner had not made any distributions to its shareholders. Petitioner transferred to Struthers $300,000 on October 1, 1968, $300,000 on October 16, 1968 and $863,500 on December 31, 1968, which amounts were recorded on the books of account of petitioner on such dates as charges to notes receivable. The funds were transferred at the direction of Struthers and were used by Struthers for purposes of capital expansion and to pay the balance of the purchase price of the stock of petitioner represented by the two promissory notes issued to Mr. and Mrs. Deviney. On each of the above dates Struthers gave petitioner a demand promissory note in the amount of the transfer which provided for the payment of interest at the rate of 6 percent. However, on the books of account of Struthers there was credited to petitioner with respect to such transfers an item denominated as "interest" *27 at a rate equal to the rate of interest paid by Struthers on borrowed funds, which ranged from 7.5 percent to 8.41 percent. Such interest credits were never discharged by transfers in cash. One of the primary reasons for issuing promissory notes was to retain the goodwill of Mr. Deviney, whom Struthers regarded as the key to petitioner's business. Struthers treated the transfers by petitioner as distributtions for purposes of the provision in the promissory note to Mr. and Mrs. Deviney which restricted distributions and loans by petitioner. Struthers later gave petitioner in substitution for the notes and with respect to additional transfers of funds a demand promissory note dated November 28, 1969 in the amount of $2,342,280. The note contained no provision for the payment of interest. Petitioner made the following additional transfers of funds to Struthers: July
1969
$600,000
October
1969
250,000
November
1969
200,000
March
1970
950,000
April 1970
460,520
June
1970
475,000
August
1970
200,000
September
1970
300,000
Novemberh1
150,0
970
00
December
1970
100,000
April
1971
100,000
August
1971
200,000 Petitioner transferred *28 a total of $5,449,020 to Struthers between October 1, 1968 and August 1971. The only transfer of funds that was ever made by Struthers to petitioner was a transfer of $200,000 in February 1971 which petitioner needed for its business. Struthers filed a consolidated Federal income tax return for its taxable year ended November 30, 1968, which included the income and deductions of petitioner for the portion of the year following the acquisition by Struthers of the stock of petitioner. Struthers also filed a consolidated Federal income tax return for the taxable year ended November 30, 1969, which included the income and deductions of petitioner for such year. None of the funds transferred from petitioner to Struthers in October 1968 or in December 1968 were formally declared as dividends by petitioner nor were any of such funds reported as dividends by Struthers on its Federal income tax returns filed for the taxable years ended November 30, 1968 and November 30, 1969. It was Struthers' practice to withdraw funds from its subsidiaries by having the funds transferred to Struthers without formal dividend declarations and to account for the withdrawals on the books by entries in *29 the inter-company accounts. The reason for this procedure was that it was an expeditious method of withdrawing funds and inter-company accounts provided a historical record of all transactions involving Struthers and a particular subsidiary. On May 4, 1972, pursuant to a plan of reorganization dated May 1, 1972, Struthers exchanged all of the outstanding stock of petitioner for 600,000 shares of Burnup and Sims, Inc. common stock. Under the terms of the agreement of reorganization, petitioner's board of directors passed a resolution to eliminate and cancel the entire amount of the inter-corporate, open account, and note indebtedness due from Struthers to petitioner as of April 30, 1972. The resolution provided in pertinent part as follows: RESOLVED that the Corporation hereby declares, effective at the close of business on April 30, 1972, and pays over to Struthers Wells Corporation ("Struthers"), a Maryland corporation, the owner of all of the 8,000 issued and outstanding shares of Common Stock, $10 per value, of the Corporation, out of the appropriate surplus account available therefor, as a distribution in the nature of a dividend, the entire amount of the outstanding intercorporate, *30 open account and note indebtedness due from Struthers to the Corporation, in the aggregate amount of $2,287,386; and further RESOLVED that each promissory note or other evidence of any of the intercorporate indebtedness due from Struthers to the Corporation as at April 30, 1972, be, and the same hereby is, cancelled and annulled; and the proper officers of the Corporation be, and they hereby are, authorized and directed to cause each such promissory note or other evidence of indebtedness to be cancelled and annulled on the face thereof and on the books of account of the Corporation or otherwise; * * * On February 11, 1970, the District Director of Internal Revenue at Jackson, Mississippi forwarded to the petitioner an examination report wherein he proposed to determine deficiencies in petitioner's Federal income tax for the taxable years ended September 30, 1967 and August 1, 1968 based in part on the imposition of an accumulated earnings tax in the amounts of $213,241.39 and $196,246.47 for the respective taxable years. Petitioner and the district conferee subsequently agreed to settle the proposed accumulated earnings tax liability for the taxable year ended September 30, 1967 by *31 the payment of $66,000 of the $213,241.39 initially determined, while respondent conceded the accumulated earnings tax for the taxable year ended August 1, 1968. In connection with the settlement reached at the district conference petitioner executed a Treasury Form 870 (Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment) which set forth the agreed deficiency and provided in part as follows: NOTE: The execution and filing of this waiver will expedite the adjustment of your tax liability. It is not, however, a final closing agreement under section 7121 of the Internal Revenue Code and does not preclude assertion of a further deficiency in the manner provided by law if it is later determined that additional tax is due; nor does it extend the statutory period of limitation for refund, assessment, or collection of the tax. Furthermore, execution and filing of this waiver will not preclude the taxpayer's filing under section 6511 of the Code a timely claim for refund or credit, on which (if disallowed by the Service) suit may be brought in the appropriate District Court or the U.S. Court of Claims. *32 Petitioner subsequently paid to the Internal Revenue Service the agreed deficiency with interest. In a letter dated January 26, 1971, the district director notified petitioner that its case was being closed in accordance with the agreement reached at the district conference. On or about June 10, 1971, petitioner was advised by the chief of the conference staff in the office of the district director in Jackson, Mississippi that the Assistant Regional Commissioner (Audit) in Atlanta, Georgia, had directed the reopening of petitioner's case and the imposition of accumulated earnings tax liability for the taxable year ended August 1, 1968. The basis for the reopening was a reopening memorandum approved by the Assistant Regional Commissioner on May 12, 1971, which requested approval to reopen the case on the basis that the settlement of the case had been founded on "substantial error." The reopening applied only to the taxable year ended August 1, 1968, insomuch as the statute of limitations with respect to assessment had expired for the taxable year ended September 30, 1967. The reopening memorandum rejected two arguments relating to hypothetical distributions to shareholders utilized *33 by petitioner at the district conference to establish that the earnings of the corporation for the taxable year ended August 1, 1968, had not been accumulated for the purpose of avoiding income tax with respect to its shareholders. Petitioner was advised in a letter in response to its request for reconsideration of the reopening that the basis of the reopening was 26 C.F.R. sec. 601.105(j)(1)(ii) (1970), which provides as follows: (j) Reopening of Cases Closed After Examination. (1) The Service does not reopen any case closed after examination by a district office or Office of International Operations to make an adjustment unfavorable to the taxpayer unless: * * *
(ii) The prior closing involved a clearly defined substantial error based on an established Service position existing at the time of the previous examination; * * * Neither the letter nor the reopening memorandum set forth any "established Service position existing at the time of the previous examination." On or about March 13, 1972, petitioner filed a claim for refund on Form 843 for the $66,000 *34 of accumulated earnings tax paid for the taxable year ended September 30, 1967. In a statutory notice of deficiency dated September 21, 1972, the Commissioner determined that petitioner had permitted its earnings to accumulate beyond the reasonable needs of its business during the taxable year ended August 1, 1968, for the purpose of avoiding income tax with respect to its shareholders and that it was subject to an accumulated earnings tax under section 531, Internal Revenue Code of 1954, in the amount of $196,246.47. OPINION The first issue for decision is whether respondent is estopped from reopening petitioner's case for the taxable year ended August 1, 1968, after if was closed in accordance with an agreement reached at a district conference. Petitioner maintains that the reopening of its case was in violation of the procedural rules governing the reopening of cases by the Internal Revenue Service and that it has been prejudiced by respondent's failure to comply with such procedural rules. Respondent contends that his compliance with the procedural rules is not essential to the validity of a notice of deficiency and that petitioner has not been *35 prejudiced by the reopening. In the alternative, respondent contends that the reopening was in compliance with the procedural rules.
Procedural rules are directory, not mandatory, in legal effect, and compliance with them is not essential to the validity of a notice of deficiency. Luhring v. Glotzbach,304 F.2d 560 (4th Cir. 1962). See Cleveland Trust Co. v. United States,421 F.2d 475 (6th Cir. 1970); Geurkink v. United States,354 F.2d 629 (7th Cir. 1965). Nevertheless, we recognize that in certain circumstances respondent might be bound by his own procedural rules under principles of estoppel where it is established that a taxpayer has been prejudiced by his failure to comply with them. Narragansett Wire Co. v. Commissioner,491 F.2d 371 (1st Cir. 1974). However, even assuming that the reopening was not in compliance with respondent's procedural rules, we find no basis for the application of the doctrine of estoppel under the facts of the instant case.The Form 870 executed by petitioner provides that "[It] is *36 not * * * a final closing agreement under section 7121 of the Internal Revenue Code and does not preclude assertion of a further deficiency * * * if it is later determined that additional tax is due." In addition, the fact that petitioner may have to litigate its tax liability for the taxable year ended September 30, 1967, in another court does not prejudice its case. Katz v. United States, an unreported case ( S.D. N.Y. 1975, 35 AFTR 2d 75-1087, 75-1 USTC par. 86,581), affd. per curiam F.2d (2d Cir. 1976). Accordingly, we conclude that respondent is not estopped from reopening petitioner's case for the taxable year ended August 1, 1968. The next issue for decision is whether the retention by petitioner of its earnings and profits for the taxable year ended August 1, 1968, had as one of its purposes the avoidance of income tax with respect to its shareholders. Section 531[2] imposes an accumlated earnings tax upon a corporation "formed or availed of for the purpose of avoiding the income tax with respect to its shareholders * * * by *37 permitting earnings and profits to accumulate instead of being divided and distributed." [3] In section 533(a) it is provided that "the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders unless the corporation by the preponderance of the evidence shall prove to the contrary." Petitioner concedes on brief that it has not established that its earnings and profits as of August 1, 1968, were not in excess of the reasonable needs of its business. Thus, in order to rebut the presumption contained in section 533(a), petitioner must establish by the preponderance of the evidence that tax avoidance was not one of the purposes for the accumulation of earnings beyond the reasonable needs of its business. United States v. Donruss Co.,393 U.S. 297 (1969). *38 Petitioner takes the position that had the retention of funds not been a condition of the sale of stock to Struthers, the Devineys could have caused petitioner to distribute to them an amount approximately equal to the current assets of the corporation as of the end of the taxable year in redemption of a portion of their stock with the remainder being sold to Struthers, thereby entitling petitioner to a dividends paid deduction under sections 561(a)[4] and the Devineys to capital gain treatment on the redemption proceeds, citing Zenz v. Quinlivan,213 F.2d 914 (6th Cir. 1954), and Rev. Rul. 55-745, 1955-2 C.B. 223. Therefore, argues petitioner, the retention of its earnings and profits until after the sale must have been for the purpose of enabling the sale to take place and could not have had as a purpose the avoidance of income tax with respect to its shareholders. However, the fact that the Devineys could receive the same tax treatment upon a redemption of a portion of their stock as upon a sale to Struthers shows nothing about the purpose for which the earnings were accumulated. Similarly, the fact that petitioner could have received a dividends *39 paid deduction as a result of a stock redemption has little bearing on the motive underlying the accumulation. Ray v. United States,409 F.2d 1322 (6th Cir. 1969). Moreover, the fact that the earnings were retained as a result of Struthers' insistance does not tend to disprove that one of the purposes of the accumulation was the avoidance of income tax with respect to petitioner's shareholders. In Apollo Industries, Inc.,44 T.C. 1 (1965), revd. on another issue 358 F.2d 867 (1st Cir. 1966), we stated at page 17: In our opinion, the reason offered for the failure to pay dividends [the request by the buyer that no dividends be paid pending the outcome of negotiations] is not inconsistent with a purpose to avoid income tax with respect to the shareholders. If the earnings of the corporation were accumulated so that its controlling shareholders could sell their stock and thereby transform what would otherwise be ordinary income to them into capital gain, this seems to present a classic example of a purpose to avoid the income tax with respect *40 to the shareholders. Accordingly, we conclude that petitioner has failed to prove that tax avoidance with respect to its shareholders was not one of the purposes for the accumulation of its earnings beyond the reasonable needs of its business. Our conclusion that one of the purposes for the accumulation of earnings by petitioner was the avoidance of income tax with respect to its shareholders is not dispositive of the question of its liability for the accumulated earnings tax, for it contends that it is entitled to a dividends paid deduction under section 561(a) for the transfers of $300,000 made to Struthers on October 1, 1968, and October 16, 1968. A decision in favor of petitioner on this issue will preclude the imposition *41 of the accumulated earnings tax for the taxable year ended August 1, 1968.
In defining the amount of income of a particular taxable year which is subject to the accumulated earnings tax imposed by section 531, section 535 allows a deduction for dividends paid during the taxable year. For purposes of computing the amount of dividends paid within the taxable year, section 563(a) provides that "a dividend paid after the close of any taxable year and on or before the 15th day of the third month following the close of such taxable year shall be considered as paid during such taxable year." [5]
Petitioner contends that the transfers of funds to Struthers constitute dividend distributions despite the form of the transactions because Struthers never intended to repay *42 the advances. Respondent, on the other hand, maintains that the transfers were never intended to be dividends. Respondent points to the following facts in support of his position: (1) the transfers were reflected on petitioner's books as loans to Struthers; (2) Struthers executed an interest-bearing note for each advance; (3) interest was credited to petitioner on the books of Struthers; (4) the transfers were not declared as dividends by petitioner or reported as such on the income tax returns of Struthers; and (5) on May 4, 1972, petitioner's board of directors canceled the promissory notes and indebtedness from Struthers which included such transfers by declaring "as a distribution in the nature of a dividend, the entire amount of the outstanding intercorporate, open account and note indebtendness due from Struthers." The fact that petitioner charged the withdrawals to a loan account is not conclusive as to their character. Jacob M. Kaplan,43 T.C. 580 (1965). Similarly, a corporate transfer of funds may constitute a dividend notwithstanding the fact that the formalities *43 of a dividend declaration were not observed or that the distribution was not recorded on the corporate books as such. Paramount-Richards Theatres v. Commissioner,153 F.2d 602 (5th Cir. 1946), affg. a Memorandum Opinion of this Court. The critical question in determining whether an advance is a genuine loan is the factual one of whether there was a definite intent to repay the advance at the time it was made. Alterman Foods, Inc. v. United States,505 F.2d 873 (5th Cir. 1974); Chism's Estate v. Commissioner,322 F.2d 956 (9th Cir. 1963); Elliott J. Roschuni,29 T.C. 1193 (1958), affd. per curiam 271 F.2d 267 (5th Cir. 1959), cert. denied 362 U.S. 988 (1960). Some of the factors considered by the courts in evaluating whether an advance to a shareholder is a dividend or a loan are as follows: (1) the extent to which the shareholder controls the corporation; (2) the earnings and dividends history of the corporation; (3) the magnitude of the advances; (4) whether a ceiling existed to limit the *44 amount the corporation advanced; (5) whether or not security was given for the loans; (6) whether there was a set maturity date; (7) whether the corporation ever undertook to force repayment; (8) whether the shareholder was in a position to repay the advances; and (9) whether there was an indication the shareholder attempted to repay the advances. Alterman Foods, Inc. v. United States,supra;LivernoisTrust v. Commissioner,433 F.2d 879 (6th Cir. 1970); Jacob M. Kaplan,supra;Elliott J. Roschuni,supra.
After carefully considering the evidence before us, keeping in mind the factors enumerated above, we are convinced that Struthers had no intention of repaying the funds advanced to it on October 1, 1968, and October 16, 1968.Therefore, we conclude that the advances in question constituted dividend distributions, not genuine loans. The following objective criteria support our conclusion that the transfers were in fact dividends. Struthers owned all of the outstanding common stock of petitioner and directed that the transfers be made. Regardless of the terms of the notes issued by Struthers to petitioner, Struthers' complete *45 control of petitioner enabled it "to render nugatory the absolute language of any indebtedness." P.M. Finance Corp. v. Commissioner.,302 F.2d 786, 789 (3d Cir. 1962). It is unlikely that Struthers would have enforced the obligations against itself in light of its economic condition. The notes contained no set maturity date, nor was any collateral provided. Petitioner's witness testified that notes were issued to retain the goodwill of Mr. Deviney whom Struthers regarded as the key to petitioner's business. Although on the books of Struthers there was credited to petitioner an item denominated as "interest," no interest was ever paid to petitioner. Despite its record of prosperity, no dividends were declared by petitioner between the date of its incorporation and May 1972. The advances were substantial in size. Within the first five months after the acquisition of the stock of petitioner, $1,463,500 was withdrawn and transfers between October 1, 1968 and August 1971 totaled $5,449,020. During such period the total of the funds transferred continuously increased, with Struthers only transferring $200,000 to petitioner in 1971. There was no apparent ceiling *46 on the transfers, with the exception of the limitation on distributions contained in the promissory note issued by Struthers to Mr. and Mrs. Deviney. There was no repayment schedule. Petitioner made no systematic effort to enforce the obligations, nor did Struthers attempt to repay the advances. Furthermore, being indebted to several banks, Struthers was in no position to repay the advances. These objective factors convince us that Struthers never intended to repay the funds advanced. The facts relied upon by respondent to establish the existence of a genuine loan are far outweighed by the objective criteria listed above pointing toward dividend classification. Accordingly, we hold that the transfers to Struthers on October 1, 1968, and October 16, 1968, constitute dividend distributions, thus entitling petitioner to a dividends paid deduction under section 561 in the amount of such transfers. Decision will be entered for the petitioners. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
*. This change in the taxable year resulted from petitioner's filing of a consolidated return with Struthers for the first taxable year following the acquisition of all of its stock by Struthers.↩
2. SEC. 531. IMPOSITION OF ACCUMULATED EARNINGS TAX. In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the accumulated taxable income (as defined in section 535) of every corporation described in section 532, an accumulated earnings tax equal to the sum of-- (1) 27-1/2 percent of the accumulated taxable income not in excess of $100,000, plus (2) 38-1/2 percent of the accumulated taxable income in excess of $100,000. ↩
3. Sec. 532(a), Internal Revenue Code of 1954↩.
4. SEC. 561. DEFINITION OF DEDUCTION FOR DIVIDENDS PAID. (a) GENERAL RULE.--The deduction for dividends paid shall be the sum of-- (1) the dividends paid during the taxable year, (2) the consent dividends for the taxable year (determined under section 565), and (3) in the case of a personal holding company, the dividend carryover described in section 564↩.
5. Rev. Rul. 72-345, 1972-2 C.B. 282, held that dividends paid within 2-1/2 months after the close of the taxable year are allowable as a dividends paid deduction for accumulated earnings tax purposes even though paid after an intervening short taxable year resulting from a reorganization under section 368(a)(1)(b)↩.