PATRICK J. MALONEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Maloney v. Commissioner
Docket No. 17617-80.
United States Tax Court
T.C. Memo 1986-91; 1986 Tax Ct. Memo LEXIS 512; 51 T.C.M. (CCH) 572; T.C.M. (RIA) 86091; March 10, 1986. Cyril L. Lawrence, for the petitioner. Bryce Kranzthor, for *513 the respondent. PARR
PARR, Judge:* Respondent determined a deficiency in petitioner's 1976 Federal income tax in the amount of $184,655. This case involves the validity of respondent's notice of deficiency. Specifically, the issues presented for decision are (1) whether petitioner's 1976 tax year was closed, so as to prevent respondent from determining further deficiencies; (2) whether respondent failed to follow its own procedural rules for reopening a closed year, and, if so, whether such failure invalidates the notice of deficiency; and (3) whether respondent conducted a second inspection of petitioner's books of account for 1976, in violation of section 7605(b), [1] and, if so, whether such violation invalidates the notice of deficiency. In the event the Court upholds the validity of the notice, the parties have reached a settlement regarding the various adjustments to income raised in the notice. *514 FINDINGS OF FACT The facts have been stipulated and are so found. The case was submitted to this Court without trial pursuant to Rule 122. At the time of filing the petition in this case, petitioner resided in Merced, California. Petitioner timely filed his 1976 Federal income tax return on July 15, 1977, pursuant to an extension of time requested by petitioner. Petitioner's 1973, 1975 and 1976 returns were subsequently selected for audit. [2] Respondent submitted an examination report explaining proposed adjustments to these returns on May 3, 1979. The report proposed a disallowance of $87,062 of petitioner's 1976 partnership loss of $131,386 from Sunshine Associates. Petitioner's 1976 loss from Gibraltar Associates, in the amount of $24,073, was not included in the report as a proposed disallowance. On June 29, 1979, petitioner executed a Form 870, Waiver of Restrictions on Assessment and Collection, [3] agreeing to the proposed deficiencies for 1973, 1975, and 1976 in the amounts *515 of $2,736, $3,555, and $27,625, respectively. He remitted the amount of taxes and interest due. By letter dated September 25, 1979, respondent notified petitioner that the revenue agent's examination report had been reviewed and accepted. By letter dated February 4, 1980, respondent informed petitioner that Sunshine Associates and Gibraltar Associates were under audit by a second revenue agent, and that adjustments might be proposed to the partnerships' returns which might affect petitioner's 1976 return. The revenue agent requested that petitioner sign a Form 872, Consent to Extend the Time to Assess Tax, since it was unlikely the partnership audit *516 would be completed before petitioner's statute of limitations expired. Petitioner refused to extend the statute of limitations for his 1976 income tax return, stating that respondent was estopped from determining additional deficiencies since petitioner had agreed to the prior adjustments. The revenue agent conducting the examination of the partnerships then initiated a request to reopen petitioner's 1976 tax year. [4] The request was made on March 4, 1980, on a Form 4505, Reopening Memorandum. The reason for the request was marked as "serious administrative omission resulting in criticism, undesirable precedent, or inconsistent treatment." The agent's request was subsequently approved by the District Director on March 19, 1980, after three intermediary levels of review. Following the reopening of the case, respondent again requested that petitioner agree to extend the statute of limitations for his 1976 return. Petitioner again refused to sign the consent. On July 15, 1980, respondent timely mailed a notice of deficiency to petitioner relating to his 1976 return. The notice stated *517 that petitioner's loss from Gibraltar Associates and the remainder of his loss from Sunshine Associates were disallowed in the absence of verification and substantiation of the partnership items. In addition, petitioner's basis was reduced and his taxable income increased by the amount of his share of the disallowed nonrecourse note and other partnership liabilities. The deficiency determined was $184,655. OPINION Petitioner contends that the examination of his 1976 income tax return was closed pursuant to an agreement with respondent. This contention appears to be based on his execution of a Form 870 agreeing to respondent's deficiency for that year, and on respondent's subsequent letter stating that the examination report was accepted. Petitioner does not allege, nor do the facts indicate, that these documents constitute a formal written closing agreement, as provided in section 7121. That section sets forth the exclusive procedure under which a final closing agreement as to the tax liability of any person can be executed. Estate of Meyer v. Commissioner,58 T.C. 69, 70 (1972). *518 See also Botany Worsted Mills v. United States,278 U.S. 282, 288 (1929). The form signed by petitioner, entitled Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, does not constitute a binding closing agreement under section 7121. The Form 870 is merely a waiver by petitioner of the statutory notice requirements imposed upon respondent by section 6213(a). Consolidated Freightways, Inc. v. United States,620 F.2d 862, 868 (Ct. Cl. 1980). The very language of the Form 870 executed by the parties in this case indicates an intent not to be bound. Joyce v. Gentsch,141 F.2d 891 (6th Cir. 1944). The form expressly states that petitioner may later file a claim for refund and that respondent is not prevented from later determining that additional tax is owed. [5] By its own terms, therefore, the Form 870 did not purport to be a final closing agreement, and did not prevent respondent from determining additional deficiencies relating to the same tax years. *519 The September 25, 1979, letter sent to petitioner informing him that his examination report was accepted likewise was not a closing agreement, and did not bar a subsequent notice of deficiency. Such letter merely indicated that for administrative purposes, the examination was closed. Petitioner concedes that respondent has procedures which allow for the reopening of such cases where necessary. As a corollary to this argument, petitioner maintains that because he agreed to the deficiencies and paid the tax due, he has been prejudiced, and respondent is therefore estopped from issuing the notice of deficiency. We cannot find any grounds for equitable estoppel here. Petitioner has not established the existence of the traditional elements of equitable estoppel, particularly a binding representation on which petitioner relied to his detriment. See Consolidated Freightways, Inc. v. Commissioner,74 T.C. 768, 791 (1980), affd. on other issues 708 F.2d 1385 (9th Cir. 1983). Respondent made no representation that he would not issue an additional notice of deficiency. Furthermore, petitioner's position was in no way prejudiced as a result of his execution *520 of the Form 870 as he could sue for a refund at any time. We therefore hold that there was no binding closing agreement, and respondent was not estopped from issuing his notice of deficiency. Petitioner next argues that respondent improperly reopened his closed 1976 tax year by failing to follow his internal procedures for reopening closed cases. Respondent's procedures for reopening closed cases are set forth in Rev. Proc. 74-5, 1974-1 C.B. 416. [6] In pertinent part, the revenue procedure reads as follows: Section 1. Purpose The purpose of the Revenue Procedure is to restate and amplify the conditions under which a case closed after examination in the office of a District Director of Internal Revenue may be reopened to make an adjustment unfavorable to the taxpayer. * * * Sec. 3. Definitions .01 Closed Case: 1. A case agreed at the district level is considered closed when the taxpayer is notified in writing, after district conference, if any, of adjustments to tax liability or acceptance of his return without change. * * * .02 Examination and Reopening:
*521 1. Contacts with taxpayers to verify or adjust items disclosed on information returns, including items of income distributable to taxpayers by partnerships, * * * are not examination or reopenings. * * * Sec. 4. Policy .01 The Internal Revenue Service will not reopenl any case closed after examination by a district office, service center or Office of International Operations to make an adjustment unfavorable to the taxpayer unless: 1.There is evidence of fraud, malfeasance, collusion, concealment or misrepresentation of a material fact; or 2. The prior closing involved a clearly defined substantial error based on an established Service position existing at the time of the previous examination; or 3. Other circumstances exist which indicate failure to reopen would be a serious administrative omission. .02 All reopenings must be approved by the District Director or by the Director of International Operation for cases under his jurisdiction. If an additional inspection of the taxpayer's books of account is necessary, the notice to the taxpayer required by section 7605(b) of *522 the Code must be signed by the District Director, or by the Director of International Operations for cases under his jurisdiction. As stated in the revenue procedure, a case agreed at the district level is considered administratively closed when the taxpayer is notified, in writing, of adjustments to tax liability or acceptance of his return without change. Respondent concedes that petitioner's 1976 tax year was administratively closed within the meaning of Rev. Proc. 74-5. Petitioner contends that the revenue agent did not obtain the necessary authorization for the reopening. Petitioner argues, in addition, that respondent did not comply with the policies stated in the revenue procedure, in that respondent did not establish fraud, collusion, concealment, misrepresentation, or substantial error at the time of reopening. Petitioner also points out that respondent's procedures *523 require that a notice of re-examination be delivered to the taxpayer at the time the re-examination is begun. We find that respondent has complied with the above revenue procedure, and that petitioner's contentions are without merit. As required by the revenue procedure, the reopening request was approved by the District Director. The revenue agent, in requesting the reopening, marked as the reason "serious administrative omission resulting in criticism, undesirable precedent, or inconsistent treatment," and expanded further in an accompanying memorandum. Petitioner's last allegation, regarding the notice of re-examination, is discussed further below, and is also without merit. Moreover, we find that, under respondent's procedures, no "reopening" occurred here. The revenue procedure specifically states that "[c]ontacts with taxpayers to verify or adjust items disclosed on information returns, including items of income distributable to taxpayers by partnerships * * * are not examinations or reopenings." The facts are undisputed that, following the original examination of petitioner's return, respondent sought to redetermine his tax liability for that year only with respect *524 to partnership items which might be affected as a result of audits of the partnerships. Adjustments of items flowing through to petitioner from partnership returns are not considered reopenings of petitioner's return under Rev. Proc. 74-5, and we therefore find that respondent did not have to comply with the policies and procedures for reopening cases set forth in that revenue procedure. [7]
Although we find no violation of respondent's procedural rules, and therefore need not decide whether any such violation would invalidate the notice of deficiency, we note that procedural rules such as the one cited above are directory, not mandatory. Collins v. Commissioner,61 T.C. 693 (1974); *525 Geurkink v. United States,354 F.2d 629 (7th Cir. 1965). Compliance with such procedures is thus not essential to the validity of a notice of deficiency. Luhring v. Glotzbach,304 F.2d 560 (4th Cir. 1962). In addition, petitioner argues that because respondent violated his procedural rules to petitioner's prejudice, respondent was estopped from issuing the notice of deficiency. Petitioner relies on Narragansett Wire Co. v. Commissioner,491 F.2d 371 (1st Cir. 1974), affg. a Memorandum Opinion of this Court, for this proposition. In that case, the First Circuit suggested, in a footnote, that a violation of a procedural rule which is shown to have prejudiced a taxpayer's position may bar a subsequent assessment of a deficiency. Narragansett Wire Co. v. Commissioner,supra at 393-394 n. 6. Because of our finding that no violation of respondent's procedures occurred, we need not consider this argument. We hold for respondent on this issue. Petitioner's main contention is that respondent, in reopening his 1976 tax year and determining additional tax deficiencies for that year, conducted a second inspection *526 of his books of account as prohibited by section 7605(b). Section 7605(b) reads as follows: No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary. Petitioner argues that respondent's letter of September 25, 1979, informing petitioner that the examination report had been accepted, was a closing letter clearly establishing the end of the audit, and that any subsequent inspection of the books of account must comply with section 7605(b). Respondent does not contest the fact that the examination was completed, but argues that no prohibited second inspection ever took place and that therefore section 7605(b) was not violated. For the reasons stated below, we agree with respondent and find no violation of section 7605(b). The *527 purpose of section 7605(b) was to prevent the Internal Revenue Service from undertaking repetitive investigations as a method of taxpayer harassment. The statute was not meant to restrict the scope of the Commissioner's legitimate power to protect the revenue. United States v. Powell, 379 U.S. 48 (1964); Collins v. Commissioner,supra.Therefore, it is not to be read so liberally as to defeat the powers granted to the Internal Revenue Service to examine the correctness of taxpayers' returns. De Masters v. Arend,313 F.2d 79 (9th Cir. 1963), cert. dismissed 375 U.S. 936 (1963). In the instant case there is no evidence of repetitive audits of petitioner. Petitioner's books and records for 1976 were examined once, and the examination was concluded [8] upon the acceptance of the examination report. The notice of deficiency subsequently mailed to petitioner was not a result of any second inspection of his books of account. It appears from the reopening memorandum that the second revenue agent, at most, inspected petitioner's 1976 tax return and the original examination report. This does not constitute an inspection *528 of a taxpayer's books of account. Pleasanton Gravel Co. v. Commissioner,64 T.C. 510 (1975), affd. per curiam 578 F.2d 827 (9th Cir. 1978, cert. denied 439 U.S. 1071 (1979); Benjamin v. Commissioner,66 T.C. 1084 (1976), affd. 592 F.2d 1259 (5th Cir. 1979). Respondent did conduct an examination of petitioner's partnerships. It is well settled that an inspection of a third party's books of account which gives rise to an adjustment on a taxpayer's return does not constitute a second inspection of that taxpayer's books in violation of section 7605(b). See Grossman v. Commissioner,74 T.C. 1147 (1980), appeals dismissed (9th Cir. 1981) (taxpayer's brother's return); Geurkink v. United States,supra (taxpayer's wholly owned corporation's return); Benjamin v. Commissioner,supra (taxpayer's controlled corporation's return); Kolom v. Commissioner,644 F.2d 1282 (9th Cir. 1981), *529 affg. 71 T.C. 235 (1978) (taxpayer's corporate employer's return); Collins v. Commissioner,supra (taxpayer's private foundation's return).Although the instant case involves a partnership, which is not a separate taxpayer, we are convinced that an inspection of a limited partnership also cannot be viewed as an examination of the limited partners' books of account. In Moloney v. United States,521 F.2d 491 (6th Cir. 1975), cert. denied 423 U.S. 1017 (1975), the Sixth Circuit held that the audit of a general partnership did constitute a second inspection of the books of its two general partners. The court stated that Since the partnership itself was not a taxable entity but merely an extension of the persons of the taxpayers themselves, partnership records were necessarily personal records and entitled to the statutory protection in the absence of a notice reopening the inspection. Moloney,supra at 501. However, where an examination of a limited partnership was at issue, this Court held that an inspection of the *530 limited partnership's books is not an inspection of the limited partners' books. In Curtis v. Commissioner,84 T.C. 1349 (1985), we held that, under facts similar to those before us, a limited partnership may have an institutional identity sufficient to distinguish an inspection of its books of account from an inspection of a partner's books for purposes of section 7605(b). The taxpayer in Curtis was a 9.5 percent limited partner in a limited partnership based in a different state. The taxpayer was an investor without physical possession of the books and records of the partnership, and with only a restricted right to participate in the management of the partnership. The Court distinguished the facts of Moloney v. United States,supra, and found that an inspection of the books of the limited partnership was more like an inspection of the books of a corporation for purposes of section 7605(b). In the case before us, petitioner owns a 9.7 percent interest in each of two limited partnerships. Nothing in the record indicates that petitioner is anything but an investor in these partnerships. We therefore cannot find, as in Moloney, that *531 these limited partnerships are an extension of petitioner, or that the partnership records are his personal records. We hold that, under the facts of this case, the inspection of the books of Sunshine Associates and Gibraltar Associates was not an inspection of the books of its limited partners, and thus did not constitute a prohibited second inspection of petitioner's books of account. We hold for respondent on this issue. Because we find no violation of section 7605(b), we need not decide whether such violation would invalidate the notice of deficiency. Due to necessary computations in accordance with the agreement of the parties, Decision will be entered under Rule 155.
Footnotes
*. By order of the Chief Judge, this case was reassigned to Judge Parr↩ for decision and opinion.
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and any references to rules are to the Tax Court Rules of Practice and Procedure.↩
2. It is not clear whether petitioner's 1974 income tax return was also examined. Petitioner's 1977 return was apparently also examined, but was not included in the same examination report.↩
3. The form reads in pertinent part: "Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled nor prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for either action. If you later file a claim and the Service disallows it, you may file a suit for refund in a district court or in the United States Court of Claims, but you may not file a petition with the United States Tax Court * * *."↩
4. The request also related to petitioner's 1977 tax return, which is not at issue here.↩
5. In fact, petitioner agreed in this Form 870 to an additional tax owed for 1975, although he had previously executed a similar waiver form agreeing to an amount of tax due for that year.↩
6. This revenue procedure is the predecessor of Rev. Proc. 83-19, 1983-1 C.B. 677, cited by petitioners, which has since been superseded by Rev. Proc. 85-13, 1985-1 C.B. 514↩.
7. The reopening memorandum indicates that petitioner's counsel agreed with the revenue agent, at the time of the reopening, that no reopening was required to flow through a partnership adjustment to a previously examined return. The revenue agent felt, however, that a formal reopening would be the wisest course to protect the Service against possible taxpayer argument and criticism.↩
8. As noted above, for administrative purposes, petitioner's examination was considered closed.↩